**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT V.,[1] | : | Case No. 2:25-cv-00877 |
| | : | |
| Plaintiff, | : | Magistrate Judge Caroline H. Gentry |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ORDER

Plaintiff filed an application for Disability Insurance Benefits in July 2023. Plaintiff's claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, this Court **AFFIRMS** the Commissioner's decision.

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

## I. BACKGROUND

Plaintiff asserts that he has been under a disability since July 21, 2023. At that time, he was thirty-eight years old and was considered a "younger person." 20 C.F.R. § 404.1563(c). He has a "high school education and above." 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 8) is summarized in the ALJ's decision ("Decision," Doc. No. 8 at PageID 48-66), Plaintiff's Statement of Errors ("SE," Doc. No. 11), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 14), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 15). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "[W]hether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of

Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651

(6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III. FACTS

### A. The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

Step 1: Plaintiff has not engaged in substantial gainful activity since July 21, 2023, the alleged onset date.

Step 2: He has the severe impairments of schizophrenia, bipolar type/ bipolar disorder, generalized anxiety disorder, major depressive disorder, and social anxiety disorder.

Step 3: He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: His residual functional capacity (RFC), or the most he can do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of a full range of work at all exertional levels, subject to the following nonexertional limitations: "no exposure to hazards, as those are defined in the [Dictionary of Occupational Titles]/[Selected Characteristics of Occupations]; no more than occasional driving; can understand, remember, and carry out simple instructions; no work that requires a specific production

rate pace, such as assembly line work or an hourly production quota; can deal with occasional changes in a routine work setting; no more than simple work-related decision making; no contact with the public; and no more than occasional interaction with co-workers and supervisors."

He is unable to perform any of his past relevant work.

Step 5: Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform.

(Decision, Doc. No. 8 at PageID 54-62.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability. (*Id.* at PageID 62.)

**B. State Agency Psychological Consultants**

State agency psychological consultant Ryan Hammond, Ph.D. reviewed the record and completed a Disability Determination Form in October 2023. (AR, Doc. No. 8 at PageID 96-103.) Dr. Hammond found moderate impairment in all four "paragraph B" areas of work-related mental functioning. (*Id.* at PageID 99.) In the mental RFC area of understanding and memory, Dr. Hammond indicated moderate limitation in the ability to understand and remember detailed instructions. (*Id.* at PageID 101.) Regarding sustained concentration and persistence, Dr. Hammond indicated moderate limitation in the following abilities: carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically-based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods. (*Id.* at PageID 102.)

As for social interaction, Dr. Hammond indicated that Plaintiff was moderately limited in the following abilities: interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors; and get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (AR, Doc. No. 8 at PageID 102.) In the final area of adaptation, Dr. Hammon indicated moderate impairment in Plaintiff's ability to respond appropriately to changes in the work setting, as well as to set realistic goals or make plans independently of others. (*Id.*)

Dr. Hammond identified the following work-related restrictions:

> [Plaintiff] can understand and remember detailed instructions that are not complex. [Plaintiff] can maintain concentration, persistence, and pace to complete detailed tasks that are not complex in work setting that requires occasional changes in production standards. [Plaintiff] would function optimally in a work setting that does not involve contact [sic] the general public. After given adequate time become [sic] familiar with co-workers, claimant can maintain effective and appropriate interactions when contact is occasional and brief, coordination for task completion is not required, and supervisory responsibilities are not required. [Plaintiff] can accept direct feedback from supervisors in a one-on-one setting with additional time to process feedback and request clarification. [Plaintiff] can respond appropriately to occasional changes in a work setting when provided with advanced notice and time to adjust work performance accordingly.

(*Id.* at PageID 102-03.)

Michael Cremerius, Ph.D. reviewed the updated record and completed a Disability Determination Form in January 2024. (AR, Doc. No. 8 at PageID 107-12.) Dr. Cremerius affirmed Dr. Hammond's findings of moderate limitation in all four "paragraph B" areas of functioning. (*Id.* at PageID 108.) Dr. Cremerius also affirmed most of Dr. Hammond's findings of moderate impairment in many of the mental RFC areas of functioning, except that Dr. Hammond identified no significant limitation (versus moderate limitation) in the

following abilities: complete a normal workday and workweek without interruptions from psychologically-based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and set realistic goals or make plans independently of others. (*Id.* at PageID 110-11.) Dr. Cremerius identified the following work-related restrictions: understanding and remembering simple instructions; performing simple, routine tasks; brief and superficial contact with co-workers and supervisors; no contact with the public; adapting to routine changes in a workplace setting; and no fast-paced tasks with strict production quotas. (*Id.*) Dr. Cremerius noted: "Variable paced tasks with end of day production quotas would be acceptable." (*Id.*)

**C. The ALJ's Decision**

The ALJ summarized Plaintiff's subjective complaints of depression, anxiety, worry, mood swings, social isolation, occasional panic attacks, restlessness, paranoia, low motivation, low energy, difficulty sleeping, deficits in attention and memory, difficulty with following instructions and completing tasks, and reduced stress tolerance. (Decision, Doc. No. 8 at PageID 55-59.) The ALJ acknowledged Plaintiff's reports of side effects from his medications, which included drowsiness and a slowed pace, as well as "an inability to tend to the full spectrum of routine daily tasks, secondary to the limitations caused by his impairments." (*Id.* at PageID 57.)

The ALJ also discussed the medical records that documented Plaintiff's treatment for his mental impairments. (Decision, Doc. No. 8 at PageID 55-59.) These records included two hospitalizations—one that occurred several months prior to the July 21, 2023 alleged disability onset date, and a second that occurred approximately one month

afterwards—for increased depression and suicidal ideation. (*Id.* at PageID 57-58.) The ALJ acknowledged that providers documented Plaintiff's complaints of hallucinations, paranoia, anhedonia, low energy, and poor sleep and appetite. (*Id.*) The ALJ noted that during both hospitalizations, Plaintiff reported significant improvement in his symptoms after he received treatment and was discharged in stable condition. (*Id.*) The ALJ also noted that Plaintiff did not have regular mental health treatment prior to the March 2023 hospitalization and resumed medication management and individual therapy after the August 2023 hospitalization. (*Id.*) The ALJ concluded that "[t]hese treatment modalities helped stabilize [Plaintiff], as demonstrated in treatment notes up to September 2023 (Exhibit 4F)." (*Id.* at PageID 58.)

The ALJ explained that later treatment records dated through early 2024 showed "sustained improvement and stability in [Plaintiff's] mental impairments." (Decision, Doc. No. 8 at PageID 58.) The ALJ acknowledged, however, that these records also documented "some underlying limitations" and some abnormal mental status findings, such as depression and anxiety. (*Id.* at PageID 55, 58.) The ALJ concluded, however, that Plaintiff's mental health condition had overall stabilized to the point that he did not have additional inpatient admissions or emergency room treatment. (*Id.*)

The ALJ discussed Plaintiff's daily activities, which included tending to his personal care, housework, yardwork, driving, shopping in stores, caring for his minor sons every other weekend, and maintaining relationships with family members. The ALJ relied on these activities to support her conclusion that Plaintiff experiences no more than moderate impairment in the "paragraph B" areas of functioning. (*Id.* at PageID 55.)

The ALJ also concluded that Plaintiff's symptoms were not fully supported by the medical evidence of record. (*Id.* at PageID 58.) The ALJ explained that although Plaintiff did have a "very difficult period" after his divorce, he had been sober for two years. (*Id.*) The ALJ acknowledged the two inpatient hospitalizations that occurred shortly before and after the alleged disability onset date but concluded that Plaintiff's subsequent mental health treatment had helped stabilize his condition. (*Id.*) The ALJ then explained her inclusion of the mental restrictions in the RFC:

> [Plaintiff] testified to some ongoing issues with sleep, low energy, and occasional panic attacks in public. [Plaintiff] indicated that his medications help, noting he is mostly stable now. [Plaintiff] testified he does not feel safe to drive a truck, part of his past work, or operate machinery, and he does not feel comfortable in public, all of which have been accommodated in the residual functional capacity. [Plaintiff] mows grass and completes household chores, along with an otherwise typical set of activities of daily living, although [Plaintiff] reports some ongoing depression and anxiety symptoms. There is no indication these symptoms are severe enough or unstable enough to prevent work within the limitations adopted in the residual functional capacity. The undersigned has included limitations in the complexity, pace, decision-making, changes in work setting, social interactions and exposure to hazards in the residual functional capacity assessment. Overall, the record warrants no additional limitations beyond those adopted.

(*Id.* at PageID 58-59.)

The ALJ found the state agency psychological consultants' "paragraph B" findings to be persuasive because they were "consistent with the medical evidence of record, and the consultants provided support for these conclusions." (Decision, Doc. No. 8 at PageID 59.) As for the work-related restrictions identified by the consultants, the ALJ concluded:

> However, the language used in the prior administrative medical findings – such as one-to-two step instructions, additional, repetition, rehearsal – is not vocationally defined, and thus, does not adequately articulate the

> limitation for use in a residual functional capacity assessment. The undersigned finds these prior administrative medical findings persuasive only insofar as they indicate that there are indeed limitations in the areas of understanding, remembering, and applying information; interacting wither others; concentrating, persisting, and maintaining pace; and adapting and managing oneself. Accordingly, in the residual functional capacity adopted above, the undersigned has used more specific, vocationally defined, and policy compliant language to express the moderate limitations arising from [Plaintiff's] mental impairments.

(*Id.*)

The ALJ further explained why she did not adopt the consultants' limitation for "brief and superficial" contact with co-workers and supervisors:

> With regard specifically to the opinion of Drs. Hammond and Cremerius regarding "brief and superficial" interaction, while no definition was provided for "brief" or "superficial," this finding can be read to indicate that the State Agency examiners have found [Plaintiff] to have general limitations in both the quantity and quality of interaction in which they may engage in a work setting. By limiting [Plaintiff] to understanding, remembering, and carrying out simple instructions, no work that requires a specific production rate pace, dealing with only occasional changes in a routine work setting, and performing no more than simple work-related decision making, in addition to limiting the frequency of interaction, the undersigned has, when the limitations are taken as a whole, limited both the quality/complexity of the interaction (simple instructions, limited pace, simple decisions, limited changes in routine work setting) and the frequency of the interaction required to perform work (occasional).

(Decision, Doc. No. 8 at PageID 59.)

## IV. LAW AND ANALYSIS

Plaintiff's sole assertion of error is that the ALJ "fail[ed] to reconcile the RFC with medical opinions in the record." (SE, Doc. No. 11 at PageID 760.) Plaintiff contends that the ALJ "deviat[ed] from medical opinions that were deemed persuasive" without adequate explanation, which "precluded meaningful review and resulted in a decision that

is not supported by substantial evidence." (*Id.* at PageID 766.) For the reasons discussed below, this assertion is not well-taken and the ALJ's decision shall be affirmed.

**A. Applicable Legal Framework**

It is well-established that determination of the RFC is a task reserved for the ALJ. 20 C.F.R. § 404.1546(c); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of his [RFC]'"). A claimant's RFC describes the most he can do in a work setting despite his physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). When formulating the RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The ALJ must base the RFC on all relevant evidence in the record, including the claimant's descriptions of his limitations and symptoms, objective medical evidence, medical opinions, other medical evidence, evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 404.1545(a)(1)-(5).

Under the applicable regulations for evaluating medical opinion evidence, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) ...." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and

(5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

The first two factors—supportability and consistency—are the "most important." 20 C.F.R. § 404.1520c(b)(2). The supportability factor recognizes that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." 20 C.F.R. § 404.1520c(c)(1). Therefore, an ALJ's supportability analysis addresses whether a medical professional has provided sufficient justification for their *own* conclusions. *See Crystal E.J. v. Comm'r of Soc. Sec.*, No. 2:21-CV-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022); *accord Burke v. O'Malley*, No. 8:23-cv-415, 2024 U.S. Dist. LEXIS 48944, *8 (M.D. Fla. Mar. 20, 2024) ("Supportability addresses the extent to which a medical source or consultant has articulated record evidence bolstering her own opinion or finding.").

The consistency factor, by contrast, recognizes that "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ's consistency analysis therefore compares the medical opinion at issue to evidence from "*other* medical and nonmedical sources." *Ford v. Comm'r of Soc. Sec.*, No. 1:22-CV-00524, 2023 WL 2088157, at *17 (N.D. Ohio Jan. 31, 2023) (emphasis added).

Because they are the most important factors, the ALJ is required not only to consider the supportability and consistency of all medical opinions in the record, but also

to "explain *how* he or she considered them."[2] *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-00326, 2023 WL 2009135, at *5 (S.D. Ohio Feb. 15, 2023) (quoting 20 C.F.R. § 404.1520c(b)(2) (internal punctuation omitted and emphasis added)). No "specific level of detail" is required, as "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim." *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-CV-03834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023) (internal quotations and citations omitted). Thus, ALJs need not use "magic words or any specific phrasing" to comply with the applicable regulations. *Id*. For example, an ALJ is not required "to use the terms 'consistency' or 'supportability' to fulfill her obligation to consider those factors." *Vieira v. Bisignano*, No. 1:25-cv-12943, 2026 U.S. Dist. LEXIS 161155, *17 (D. Mass. July 21, 2026).

Nevertheless, an ALJ is required "to show his or her work." *Scott K. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00129, 2022 WL 4484603, at *4 (S.D. Ohio Sept. 27, 2022) (internal quotations and citation omitted). Thus, "[t]his Court cannot uphold an ALJ's decision, even if there if there is enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (internal quotations and citation omitted). *See also Danyel P. v. Comm'r of Soc. Sec.*, No. 2:21-CV-02405, 2022 WL 1514170, at *6 (S.D. Ohio May 13, 2022) (ALJ's "inexplicable and illogical consistency" warranted remand); *Kimberly S. v.*

---

[2] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

*Comm'r of Soc. Sec.*, No. 3:21-CV-00310, 2022 WL 17820565, at *3 (S.D. Ohio Dec. 20, 2022) (ALJs must "provide a coherent explanation of [their] reasoning ... in order to provide sufficient rationale for a reviewing adjudicator or court"); *Hardiman v. Comm'r of Soc. Sec.*, No. 2:12-CV-00508, 2013 WL 3762266, at *5 (S.D. Ohio July 16, 2013) (remanding case where "the ALJ's decision is internally inconsistent and incomplete").

**B. The ALJ's Conclusions Regarding the State Agency Psychological Consultants' Findings Are Supported by Substantial Evidence, And the ALJ Did Not Err by Failing to Include Additional Mental Limitations in the RFC.**

Plaintiff argues that the ALJ erred by failing to include a limitation for brief and superficial interaction in the RFC even though she found Dr. Cremerius' findings to be persuasive, and by not sufficiently explaining why she omitted that limitation. (SE, Doc. No. 11 at PageID 761-65.) Plaintiff also argues that the ALJ erred by omitting several work-related limitations identified by Dr. Hammond from the RFC without explaining the omissions. (*Id.*) For the reasons discussed below, these assertions are not well-taken.

Significantly, although ALJs are required to consider medical opinion evidence when determining the RFC, they are not required to adopt those opinions or any findings verbatim. *McIntosh v. Colvin*, No. 16-cv-0963-JAH-BGS, 2018 U.S. Dist. LEXIS 30778, at *15 (S.D. Cal. Feb. 26, 2018) (the RFC need not "recite medical opinions verbatim[;] rather the ALJ is responsible for translating and incorporating medical findings into a succinct RFC.") (citation omitted); *c.f. Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("Although the ALJ may not substitute his opinions for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his

residual functional capacity finding."). Even when an ALJ gives great weight to an opinion—which did not happen here—"there is no requirement that an ALJ adopt a state agency psychologist's opinion verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). The ALJ must, however, "explai[n] the basis for the RFC determination." *Anissa H. v. Comm'r of Soc. Sec.*, No. 2:21-cv-5315, 2023 U.S. Dist. LEXIS 23150, at *24 (S.D. Ohio Feb. 9, 2023), *report and recommendation adopted*, No. 2:21-cv-5315, 2023 U.S. Dist. LEXIS 54657 (S.D. Ohio Mar. 29, 2023).

As an initial matter, the Court disagrees with Plaintiff's assertion that the ALJ found the opinions of the consultative psychologists to be persuasive in their entirety. The ALJ only found the consultants' "paragraph B" findings (that Plaintiff was moderately impaired in each of the four areas of functioning) to be persuasive. (Decision, Doc. No. 8 at PageID 59.) The ALJ did ***not*** conclude that the work-related restrictions identified by the consultants were persuasive. (*Id.*) Instead, the ALJ stated that "the language used in the prior administrative medical findings" was "not vocationally defined" and did "not adequately articulate the limitation for use in a residual functional capacity." (*Id.*) The ALJ found the work-related restrictions to be "persuasive only insofar as they indicate that there are indeed limitations in the areas of understanding, remembering, and applying information; interacting wither [sic] others; concentrating, persisting, and maintaining pace; and adapting and managing oneself." (*Id.*) The ALJ then accounted for Plaintiff's moderate limitations in the "paragraph B" areas of functioning by including a number of mental restrictions in the RFC. (*Id.* at PageID 56.) The Court concludes that the ALJ

adequately explained why she did not adopt the work-related limitations identified by the consultants in the RFC, and her conclusions are supported by substantial evidence.

Plaintiff argues that the ALJ erred by failing to adopt—without adequate explanation—Dr. Cremerius' limitation for brief and superficial contact with co-workers and supervisors. (SE, Doc. No. 11 at PageID 762-65.) This argument is not well-taken because the ALJ adequately explained that she did not adopt this limitation because Dr. Cremerius did not define the terms "brief" or "superficial." (Decision, Doc. No. 8 at PageID 59.) The record confirms that Dr. Cremerius did not define these terms in his assessment. (*See* AR, Doc. No. 8 at PageID 111.)

Moreover, the ALJ did not ignore Dr. Cremerius's recommended limitation, but instead interpreted it "to indicate that the State Agency examiners have found [Plaintiff] to have general limitations in both the quantity and quality of interaction in which they may engage in a work setting." (*Id.*) The ALJ explained that the RFC limitations for simple instructions and decision-making, no work requiring a specific production rate pace, and no more than occasional changes in a routine work setting—in combination with the limitation on the frequency of Plaintiff's social interactions (i.e., the limitation to no more than occasional interaction with co-workers and supervisors)—limit "both the quality/complexity of the interaction (simple instructions, limited pace, simple decisions, limited changes in routine work setting) and the frequency of the interaction required to perform work (occasional)." (*Id.*)

Plaintiff cites to a decision from this district to support his assertion that the RFC limitation for "occasional" interaction does not account for Dr. Cremerius' limitation to

"brief" interaction. (SE, Doc. No. 11 at PageID 762-65 (citing *James M. G. v. Comm'r of Soc. Sec.*, No. 2:25-CV-300, 2025 WL 2502321, at *4 (S.D. Ohio Sept. 2, 2025).) *James*, however, is distinguishable because the ALJ in that case did not explain why she did not incorporate the state agency psychological consultants' limitation for brief social interactions into the RFC. 2025 WL 2502321, at *4. Here, by contrast, the ALJ ***did*** explain her decision to omit this limitation. (Decision, Doc. No. 8 at PageID 59.)

A more analogous case is *Deana F. v. Commissioner of Social Security*, No. 2:25-cv-01121, 2026 U.S. Dist. LEXIS 104617, at *9 (S.D. Ohio May 12, 2026), *report and recommendation adopted sub nom Deana L.F. v. Comm'r of Soc. Sec.*, No. 2:25-cv-01121, 2026 U.S. Dist. LEXIS 122585 (S.D. Ohio, June 3, 2026). The plaintiff in *Deana F*. similarly asserted that the ALJ erred by not including the state agency psychological consultants' limitation to "brief and superficial interactions with others" in the RFC. The ALJ in *Deana F.* explained that the work-related limitations identified by the consultants were not included in the RFC because of their "non-vocationally defined terminology – such as superficial – which significant [sic] limits the utility of the findings." *Id.*

On appeal, this Court rejected the plaintiff's argument that the ALJ's explanation was insufficient. *Deana F.* at *4. After noting that ALJs are not required to adopt a medical opinion verbatim, the Court stated: "In the end, '[t]he ALJ is not required to describe the claimant's limitations using the exact language of ... medical sources as long as substantial evidence demonstrates that the ALJ adequately portrayed the claimant's limitations in the RFC" and the ALJ "build[s] an accurate and logical bridge between the evidence and his [or her] conclusion." *Id.* (citing *Aerial T. v. Comm'r of Soc. Sec.*, No.

2:23-cv-04188, 2025 WL 798367, at *3 (S.D. Ohio Mar. 13, 2025); *Davis v. Comm'r of Soc. Sec.*, No. 2:19-cv-265, 2019 U.S. Dist. LEXIS 194432, at *14 (S.D. Ohio Nov. 8, 2019)). The Court noted that "the ALJ correctly catalogued the psychologists' terminology like 'superficial' as not vocationally defined." *Id.* at *11. The Court also found that the ALJ "accounted for [the plaintiff's] moderate social interaction limitations by limiting [the plaintiff] to occasional interactions with coworkers, supervisors, and the general public." *Id.* at *12. The undersigned agrees with the reasoning and result in *Deana F.*, which is squarely on point here.

Plaintiff also argues that the ALJ erred by failing to include several work-related limitations identified by Dr. Hammond: namely, that Plaintiff could "accept direct feedback from supervisors in a one-on-one setting with additional time to process feedback and request clarification" and "respond appropriately to occasional changes in a work setting when provided with advanced notice and time to adjust work performance accordingly." (SE, Doc. No. 11 at PageID 765.) Plaintiff argues that the ALJ failed to build a logical bridge between the evidence and the RFC when she omitted these restrictions. (SE, Doc. No. 11 at PageID 764-65.) This assertion is also not well-taken.

As an initial matter, the ALJ did not fail to explain why she omitted the work-related limitations identified by Dr. Hammond from the RFC. The ALJ explained that "the language used in the prior administrative medical findings – such as one-to-two step instructions, additional, repetition, rehearsal – is not vocationally defined, and thus, does not adequately articulate the limitation for use in a residual functional capacity assessment." (Decision, Doc. No. 8 at PageID 59.) The ALJ further explained that she

"used more specific, vocationally defined, and policy compliant language to express the moderate limitations arising from [Plaintiff's] mental impairments." (*Id.*) The Court finds that the ALJ adequately explained her reasons for omitting the identified restrictions. Moreover, as noted above, the ALJ was not required to adopt any of the recommended limitations verbatim.

In sum, the ALJ did not err by rejecting the limitations recommended by the consultants and by including different limitations in the RFC to account for Plaintiff's moderate impairment in the "paragraph B" areas of functioning. "The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician." *Poe*, 342 F. App'x at 157 (citing 20 C.F.R. § 404.1546(c)). The ALJ explained the basis for the limitations included in the RFC and her conclusions are supported by substantial evidence. 20 C.F.R. § 404.1520c. Because the ALJ's decision to include different limitations to account for Plaintiff's moderate impairment in the "paragraph B" areas of functioning is within the permissible "zone of choice," *Mullen*, 800 F.2d at 545, the ALJ's decision is affirmed.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. No. 11) is OVERRULED;
2. The Court AFFIRMS the Commissioner's non-disability determination; and
3. The case is terminated on the Court's docket.

*/s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge